UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

CASE NO. 21-60017-CR-RKA

**UNITED STATES OF AMERICA**

vs.

**TONYE JOHNSON,**

      **Defendant.**
_____/

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, hereby submits this Sentencing Memorandum as to Defendant Tonye Johnson (the "Defendant"). The Defendant is presently set for sentencing before the Court on July 29, 2021 for his conviction by guilty plea to one count of conspiracy to commit wire fraud, in violation of Title 18, United State Code, Section 371. The offense stems from the Defendant's receipt a fraudulent Paycheck Protection Program ("PPP") loan of $389,627 on behalf of his company, Synergy Towing and Transport, LLC ("Synergy").

For the reasons set forth herein, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of 24 months, to be followed by three years of supervised release.[1]  A sentence of 24 months' imprisonment represents the top of the applicable sentencing range produced by the United States Sentencing Guidelines (the "Guidelines") at

---

[1] The United States is also seeking forfeiture of $165,722.13 and restitution of $165,722.13, consistent with the Plea Agreement [ECF No. 30 ¶¶ 13, 17]. On July 7, 2021, the Court entered a Preliminary Order of Forfeiture [ECF No. 43]. The Defendant has also agreed to pay a special assessment of $100 [ECF No. 30 ¶ 5].

Offense Level 15 and Criminal History Category I, which the United States and the Defendant submit is the correct calculation of the Guidelines.[2] Furthermore, the sentence recommended herein by the United States will provide punishment for the offense of conviction that is sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## I.   FACTUAL BACKGROUND

In early 2020, as the COVID-19 pandemic spread across the country and disrupted everyday life, causing illness, death and economic distress, the U.S. government assembled relief programs to help those whose livelihoods were jeopardized. One of those programs was the PPP. Against this backdrop, the Defendant and his co-conspirators participated in a scheme to obtain by fraud millions of dollars in forgivable loans through the PPP, and did so by conspiring with James Stote, Phillip J. Augustin, and others. The Defendant obtained a fraudulent PPP loan for his own company, Synergy, with Stote providing falsified documents and submitting the application on the Defendant's behalf in exchange for a kickback from the loan proceeds for himself and Augustin. To inflate the size of these PPP loans, and the corresponding kickbacks, the conspirators relied on a variety of false statements, including by submitting falsified bank statements and payroll tax forms.

---

[2] The United States Probation Office ("Probation") calculates the Total Offense Level at 18 in the final draft of the Presentence Investigation Report, disclosed July 20, 2021 [ECF No. 48] (the "PSR"), which produces an advisory Guidelines range of 27-33 months at Criminal History Category I. As explained further herein, Probation does not recommend application of the three-level reduction for acceptance of responsibility, pursuant to Section 3E1.1, because the Defendant provided a urine sample that tested positive for marijuana and attempted to conceal his marijuana use by using a device to provide the urine of another individual for testing. The Defendant objected to Probation's position [ECF No. 45] and the United States conceded the objection [ECF No. 47].

A.     **The CARES Act**

In March 2020, in response to the many challenges presented by the pandemic, Congress passed the CARES ACT, Pub. L. 116-136, which created the PPP.  The PPP authorized $349 billion in forgivable loans to small businesses to be used for payroll, mortgage interest, rent/lease payments, or utilities.   In April 2020, Congress authorized an additional $310 billion for PPP funding.  These funds were designed to address the unprecedented crisis facing Americans—especially business owners whose livelihoods were threatened by the public health emergency. PPP funds were designed as a lifeline.

The program was designed to provide funds quickly and easily to qualifying individuals. PPP loans were not dispensed through any government bureaucracy; funds were distributed by banks who had existing relationships with many of the people in need.  To apply, individuals submitted an application to a participating financial institution along with supporting documentation as to the business's payroll expenses.  The supporting documentation requirement was minimal, and could be satisfied with one years' worth of the company's tax records.  If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the Small Business Administration ("SBA").

B.     **Overview of Defendant's Conduct**

A more detailed recitation of the facts relating to the scheme are detailed in the Information (ECF No. 20), Defendant's factual proffer statement (ECF No. 29), and the PSR (ECF No. 48).

Beginning in May 2020 through in or around at least August 2020, the Defendant conspired with Stote, Augustin, and others to obtain by fraud a PPP loan on behalf of Synergy, a Pennsylvania limited liability company that the Defendant organized and owns.  The Defendant operates Synergy as a towing and roadside assistance business.

In furtherance of the conspiracy, the Defendant caused the submission of a PPP loan application on behalf of Synergy that the Defendant knew contained materially false and fraudulent representations, including both the number of employees that Synergy had during each quarter of 2019 and the amount of wages paid by Synergy during each quarter of 2019. Specifically, the Defendant exchanged text message with Augustin on or about May 14, 2020 in which the Defendant sent Augustin screenshots of emails that the Defendant had received after the PPP application was submitted to Bank Processor 1. Then, on or about May 18, 2020, the Defendant electronically signed a PPP loan application form on behalf of Synergy, which falsely represented that Synergy had 16 employees and an average monthly payroll of $155,851. Bank Processor 1 approved and funded a PPP loan for Synergy in the amount of $389,627. Thereafter, the Defendant paid kickbacks to Stote in the amount of $97,418. In subsequent calls with a federal agent acting in an undercover capacity whom the Defendant believed was an employee of Bank Processor 1, the Defendant affirmed the accuracy of IRS payroll filings for Synergy that were entirely fictitious. The Defendant did so with the understanding and hope that the purported Bank Processor 1 could help unfreeze the Defendant's bank account that had received the fraudulent proceeds of the loan.

## II.    PROCEDURAL HISTORY

On September 18, 2020, the Defendant was charged by complaint with conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349, wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344 [ECF No. 1]. Following waiver of indictment, on January 15, 2021, the Defendant was charged in an Information with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371 [ECF No. 20]. On April 20, 2021, at a hearing before U.S. Magistrate Judge Patrick M. Hunt, the Defendant pleaded guilty to the

Information pursuant to a written plea agreement [ECF No. 32]. On June 29, 2021, this Court accepted Judge Hunt's Report and Recommendation on Defendant's guilty plea [ECF No. 40]. Sentencing is presently scheduled for July 29, 2021.

### III. SENTENCING GUIDELINES CALCULATIONS

The only issue concerning the computation of the Defendant's Guidelines range is whether the Court should reduce the Defendant's Offense Level by 3-levels for acceptance of responsibility pursuant to Section 3E1.1(a) and (b) of the Guidelines. This is strictly a legal question because the underlying facts are not disputed—on May 11, 2021, the Defendant tested positive for marijuana and attempted to conceal his marijuana use from Probation by using a device (referred to in the PSR as a "whizzinator") to provide urine from someone other than the test taker (PSR ¶¶ 11, 42, 69). Probation takes the position that such conduct disqualifies the Defendant from receiving a reduction for acceptance of responsibility, which would result in an Offense Level of 18 and produce an advisory Guidelines range of 27-33 months' imprisonment. However, without losing sight of the fact that the Defendant's misconduct related to the May 11 drug test is both serious and troubling—and should be reflected in the sentence to be imposed—the Government submits that a strict application of Section 3E1.1(a) to the facts of this particular case still entitles the Defendant to receive credit for his acceptance of responsibility.

Subsection (a) of § 3E1.1 provides that the defendant's offense level should be reduced by 2 levels if he "clearly accepts responsibility for his offense." To determine whether a defendant qualifies under subsection (a), Application Note 1 of § 3E1.1 provides a non-exhaustive list of appropriate considerations. In the Government's view, the Defendant has met that criteria. Following arrest, the Defendant took a cooperative posture with Government and maintained a position throughout this case consistent with his ultimate decision to accept responsibility by

pleading guilty. He agreed to be interviewed without counsel following arrest and truthfully answered questions by federal agents regarding his criminal conduct. He also agreed to waive indictment and proceed by information. Finally, through his counsel, the Defendant has kept an open dialogue with the Government through which the Defendant indicated early and often that he was prepared to accept the consequences for his criminal actions. As such, the factors present in this case support the "legitimate societal interest" in reducing the offense level for a defendant who clearly demonstrates acceptance of responsibility, consistent with the commentary to § 3E1.1.

Notwithstanding, Probation correctly observes that, under the Plea Agreement, the United States is not required to recommend a reduction for acceptance of responsibility if, among other things, the Defendant "commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental or official." (ECF No. 30 at ¶ 7). The Government unequivocally affirms that the Defendant's conduct at issue constitutes misrepresentations to a governmental entity or official and, therefore, gives the United States the right not to recommend a reduction for acceptance. That said, when viewed in the overall context of the facts and circumstances of the case, the Defendant's misconduct as to the drug test bears less on his acceptance of the offense of conviction and more on his history and characteristics. Accordingly, the Defendant's illicit behavior during the presentence investigation should be considered as part of the analysis of an appropriate sentence pursuant to 18 U.S.C. § 3553(a). This is addressed in the following section.

## IV.     CONSIDERATION OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

Title 18, United States Code, Section 3553(a), enumerates several factors that the Court shall consider in sentencing a defendant. As addressed in turn below, the 3553(a) factors relevant to the Defendant support the sentence recommended by the United States. Contrary to Defendant's motion for a downward variance [ECF No. 44], these factors do not support a downward variance.

### A.     Nature and Circumstances of the Offense

This was a serious offense. In 2020, as the COVID-19 pandemic spread across the country causing illness, death and economic distress, the government created PPP loans to help small business owners and their employees whose livelihoods were jeopardized. The Defendant took advantage of the program by submitting a false application claiming to have employees and payroll that did not exist. His application was supported by false tax forms and a fictitious bank statement. Then, when the Defendant's bank account was frozen because of the receipt of fraudulent PPP loan proceeds, the Defendant continued to make misrepresentations to a person he believed to be an employee of Bank Processor 1 in an effort to unfreeze those proceeds. The Defendant's willful participation in this serious criminal conduct warrants a sentence of imprisonment within the advisory Guidelines range.

The United States' recommended sentence of 24 months' imprisonment, which is at the top of the Guidelines range after granting him a reduction for acceptance of responsibility, is sufficient but not greater than necessary to accomplish this goal.

### B.     History and Characteristics of the Defendant

The Defendant is a 29-year-old man who founded Synergy in 2015 [ECF No. 48 (PSR) ¶ 14]. The Defendant is in good health and is the father of five children. (*Id.* ¶¶ 62-66.) The Defendant has no criminal history points. (*Id.* ¶ 54.)

The Defendant agreed to plead guilty before being indicted, and thus deserves credit for accepting responsibility early and saving the government considerable resources in preparing for trial. However, the Defendant exercised terrible judgment when he used drugs during the presentence investigation and, even worse, attempted to conceal his drug use from Probation by using a device intended to provide another person's urine sample. Such conduct demonstrates that the Defendant fails to appreciate or understand the gravity of his circumstances and shows a lack of respect for the law and this Court. Attempting to deceive Probation cannot go unpunished, and the United States submits that the Court should account for such conduct by imposing a sentence at the top of the adjusted Guidelines range, that is, 24 months' imprisonment.

    **C.**    **Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant**

The sentence in this case should address a need for both general and specific deterrence. As to general deterrence, the Eleventh Circuit has explicitly stated that "general deterrence is an important factor in white-collar cases, where the motivation is greed." *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014). As explained above, this case was motivated by greed at time when millions of Americans were suffering from the economic impact of a global pandemic. As the pandemic spread, so too did fraud related to the PPP program and other programs designed to provide critical economic assistance—especially in the Southern District of Florida. The government's recommended sentence of imprisonment in this case is thus appropriate to provide both specific and general deterrence. Such a sentence will send a clear message to the Defendant and other offenders that there are serious consequences for defrauding government pandemic relief programs. Indeed, as the pandemic continues to impact small businesses, the PPP loan program remains ongoing. Actors like the Defendant who seek to defraud these programs not only drain

the program of limited funding, they make it more difficult for administrators of government and other relief programs to get aid to individuals that qualify for and need it. The Defendant's sentence will serve as a warning and deterrent to others inclined to exploit pandemic relief programs.

Furthermore, a sentence at the top of the adjusted Guidelines range is sufficient to protect the public from future crimes of this Defendant and deter him – as well as others – from being untruthful with Probation.

### D.     Need for the Sentence to Avoid Unwarranted Sentencing Disparities

The sentence recommended by the United States will not create an unwarranted sentencing disparity. There are two relevant points of comparison to avoid unwarranted sentencing disparities: sentences associated with others convicted of PPP related fraud, and the sentences of co-conspirators in this case. While a relatively small number of defendants have been sentenced to date for offenses related to PPP fraud, judges of this Court and of other Districts have imposed sentences with significant terms of imprisonment. *See, e.g.*, *United States v. Ioannis Kralievits*, Case No. 21-20157-CR-Altonaga (S.D. Fla. June 30, 2021) (sentencing cooperating defendant to 19-month term of imprisonment (following reduction pursuant to 5K1.1) in connection with two fraudulent PPP loans totaling approximately $824,750); *United States v. David Hines*, Case No. 21-20011-CR-Cooke (S.D. Fla. May 12, 2021) (imposing 78-month term of imprisonment for defendant responsible for a loss of $3.9 million resulting from multiple fraudulent PPP loans); *United States v. Ganell Tubbs*, 20-00193-CR-Miller (E.D. Ark.) (imposing 41-month term of imprisonment for defendant responsible for loss of $1.9 million resulting from two fraudulent PPP loans).

The Defendant is the second of the conspirators in this scheme to be sentenced. On July 13, 2021, Judge Ruiz sentenced co-conspirator Tiara Walker to one year and one day, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Walker*, Case No. 20-cr-60159-RAR (S.D. Fla., July 13, 2021). Similar to Defendant Johnson, Walker obtained a fraudulent PPP loan as part of this scheme (in the amount of $258,575), had no criminal history, and had an advisory Guidelines range of 18-24 months. Unlike Defendant Johnson, however, Walker showed considerable remorse and acceptance of responsibility without making false statements or misrepresentations during the presentence investigation as the Defendant did during his drug testing.

The loss amount of $389,627 attributable to the Defendant is an important measure of his relative culpability as compared to co-conspirators in a scheme involving over 90 fraudulent loan applications and over $34 million in intended losses. That is, the co-conspirators that referred others to the scheme or were involved in preparing or submitting multiple fraudulent loan applications will be responsible for a greater intended loss amounts, and a correspondingly higher advisory Guidelines range under Section 2B1.1. A sentence of 24 months for this Defendant, who is being held responsible only for the loss associated with his single fraudulent loan, will provide a consistent framework for future sentences of co-conspirators in this conspiracy whose Guidelines correlate to the losses for which they are directly responsible, even if those losses are greater.

V.   **RESTITUTION & FORFEITURE**

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A(a)(1). As set forth in the Plea Agreement [ECF No. 30 ¶ 17], the United States and the Defendant have agreed that the Defendant owes restitution in the amount of $165,722.13, which represents the loss to Bank 1 as

a result of the Defendant's participation in the conspiracy.[3]  Restitution is owed joint and severally with the Defendant's co-conspirators charged in at least the following related cases: 20-2207-MJ-Ruiz (N.D. Oh.) and 20-4215-MJ-Greenberg (N.D. Oh.).

Furthermore, pursuant to the Plea Agreement, the Defendant agreed to a forfeiture money judgment in the amount of $165,722.13 [ECF No. 30 ¶ 13].  On July 7, 2021, the Court entered a preliminary order of forfeiture in which the Court entered a forfeiture money judgment of $165,722.13 [ECF No. 43].

*     *     *

---

[3] Bank 1 was able to recover approximately $223,904.87 of the fraudulent proceeds from the bank at which the Defendant had a checking account that received the fraudulent proceeds of his PPP loan.

## CONCLUSION

For the forgoing reasons, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of twenty-four (24) months, to be followed by a term of supervised release of three (3) years. The United States also requests that the Court order restitution, forfeiture, and a special assessment, consistent with the Plea Agreement [ECF No. 30] and the point and authorities discussed herein.

Respectfully Submitted,

| | |
|---|---|
| JUAN ANTONIO GONZALEZ<br>ACTING UNITED STATES ATTORNEY | JOSEPH S. BEEMSTERBOER<br>ACTING CHIEF, FRAUD SECTION |
| By: /s/ *David A. Snider*<br>DAVID A. SNIDER<br>Assistant United States Attorney<br>Court ID No. A5502260<br>500 E. Broward Blvd.<br>Fort Lauderdale, FL 33394<br>Tel: (954) 660-5696<br>Fax: (954) 695-0651<br>Email: david.snider@usdoj.gov | By: /s/ *Philip B. Trout*<br>PHILIP B. TROUT<br>Trial Attorney, Fraud Section<br>U.S. Department of Justice<br>1400 New York Ave NW<br>Washington, DC 20530<br>Tel: (202) 616-6989<br>Fax: (202) 514-3708<br>Email: philip.trout@usdoj.gov |