**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : |
| V. | : |
| | : |
| | : |
| TONYE C. JOHNSON | :       CASE NO. 21-CR-60017-RKA |

**DEFENDANT'S SENTENCING MEMORANDUM**

Tonye C. Johnson (pronounced "Tony") by his counsel undersigned, respectfully submits this Memorandum in support of mitigation at sentencing.

**I.     PROCEDURAL HISTORY**

Tonye C. Johnson (hereinafter, "Johnson") was arrested on October 1, 2020, in the Eastern District of Pennsylvania, in connection with his involvement in a Paycheck Protection Program (PPP Loan) fraud scheme. Thereafter, he was charged in a single-count Information pursuant to 18 U.S.C. 371, relating to Conspiracy to Commit Wire Fraud. The Information also included a forfeiture count.

On April 20, 2021, Johnson entered a guilty plea to the aforementioned Information before the Honorable Patrick M. Hunt, United States Magistrate Judge. Sentencing is scheduled for July 29, 2021.

**II.    DEFENDANT'S PERSONAL HISTORY**

Mr. Johnson is a twenty-nine (29) year old man, who is a life-long resident of the Philadelphia region. He is the father of five (5) minor children. He resides with his fiancée, Martisha Spivey, on North Lawrence Street in Philadelphia.

1

A 2010 graduate of Springfield High School[1], Johnson briefly attended college at Cheyney University of Pennsylvania.  During high school, Johnson enrolled in a dual education program, earning an automotive technician certificate, along with his diploma.  Johnson did not further pursue a college degree for two primary reasons.  First, he became an expectant father shortly after starting college.  Secondly, he realized his interested were more aligned with hands-on, physical work.

In 2011, at age 19, Johnson learned the tow truck trade in Philadelphia and started his own business, Synergy Towing and Transport.  Since that time, he has been self-employed and steadily growing his business.  Originally operated as a sole proprietorship, Johnson incorporated the business in 2015[2].  Synergy Towing grew from a single-truck, single-driver operation to its current small fleet of six tow trucks and approximately eight employees.  With very few exceptions for personal time off, Johnson works at his business every single day, many times working continuous night and day-time shifts.  During periods uninterrupted shifts, Johnson "resides" at his office and storage yard, located on W. Westmoreland Street in Philadelphia.  His shop is outfitted with modest living quarters, including a shower and cooking facilities.  He is involved in every minute aspect of his business, from personally dealing with customer needs and taking care of his employees.

Mr. Johnson stands before the Court having no prior convictions, a Criminal History Category of I.

Mr. Johnson enjoys a significant amount of support, including family members, friends and community members, many of whom will attend sentencing.  It is anticipated this support will continue beyond sentencing and his eventual termination from federal supervision, thereby,

---

[1] Springfield Township is in Montgomery County, Pennsylvania, immediately adjacent to Philadelphia County.

[2] Synergy Towing & Transportation, LLC, is a Pennsylvania limited liability company, organized in June 2015.

hopefully, reducing the risk of recidivism. (True and correct copies of several character letters from family and friends are attached hereto, incorporated herein and marked as Exhibits A.)

**III.   GUIDELINE CALCULATIONS**

The Presentence Report prepared by U.S. Probation & Parole Office sets Johnson's guidelines sentencing range at 27-33 months. This is consistent with a Criminal History Category of I and Offense Level 18.

Mr. Johnson filed an objection to the calculated guideline range, which did not afford Johnson a 3-point adjustment for Acceptance of Responsibility.[3] The basis for not recommending an adjustment for acceptance is two-fold. First, Johnson produced a urine sample that tested positive for marijuana. Secondly, in an effort to subvert a valid urine test, Johnson employed an anatomically correct device containing the urine of another individual when submitting to a drug test. These events occurred on May 11, 2021, while on pre-trial release.

In United States v. Rodgers, the district court was within its discretion to deny an adjustment for acceptance of responsibility when the defendant tested positive for drug use. United States v. Rodgers, 278 F.3d 599 (6th Cir. 2002).[4]

Apart from the events of May 11, 2021, Johnson has demonstrated an acceptance of responsibility for his conduct. Notably, following his arrest, Johnson, through his undersigned counsel, advised the Government he likely would enter a guilty plea. After having an opportunity

---

[3] ECF No. 45.
[4] See also, United States v. McLaughlin, 378 F.3d 35 (2004) (acceptable of responsibility denied due to defendant having been arrested for DUI and drug possession on separate occasions while on pre-trial supervision); United States v. Ceccarani, 98 F.3d 126 (3rd Cir. 1996) (district court justified in not recognizing defendant's acceptance of responsibility for testing positive for drugs five times while on pre-trial supervision and refusing to undergo treatment).

to review partial discovery prior to his arraignment, Johnson confirmed his intention to enter a guilty plea. Johnson chose to proceed by way of Information, rather than indictment.

Additionally, Johnson entered a Plea Agreement in which he agreed to restitution and forfeiture in the amount of $165,722.13.

Finally, Johnson submitted to a subsequent urine test on July 6, 2021. The results were negative for elicit substances.

The foregoing facts demonstrate an individual that, except for the events of May 11, 2021, has accepted responsibility for his conduct that brings him before this Court, and further, through the handling of this prosecution, has not unnecessarily consumed government and court resources following his arrest.

The cases cited, supra, highlight the Court's discretion to deny an adjustment for acceptance of responsibility. However, given Johnson's overall pre-trial adjustment, the defense requests this Court to conclude that he has, indeed, accepted responsibility, and therefore, is entitled to a 3-level downward adjustment pursuant to USSG §3E1.1.

In the event the Court sustains Johnson's objection, the resultant Offense Level would be 15, yielding an advisory guideline range of 18-24 months.

IV. **SENTENCING UNDER BOOKER**

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holdings in Blakely v. Washington, 124 S. Ct. 2531 (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000), apply to the Federal Sentencing Guidelines. United States v. Booker, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences

imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. Id. at 751. Accordingly, reaffirming its holding in Apprendi, the Court concluded that

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

Id. at 756.

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), or which rely upon the Guidelines' mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. Booker, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker,

> requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a).

Booker, 125 S. Ct. at 757. Thus, under Booker, sentencing courts must treat the guidelines as one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and

5

>    (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

> 1) "the nature and circumstances of the offense and the history and characteristics of the defendant" [§ 3553(a)(1)];
> 2) "the kinds of sentences available" [§ 3553(a)(3)];
> 3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" [§ 3553(a)(6)]; and
> 4) "the need to provide restitution to any victims of the offense." [§ 3553(a)(7)].

Other statutory sections also give the district court direction in sentencing. In particular, in determining whether and to what extent a sentence of imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation." 18 U.S.C. §3582 (emphasis added).

Under 18 U.S.C. §3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. Accordingly, courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore." United States v. Ranum, 353 F.

Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.); <u>see</u> also <u>United States v. Jaber</u>, 362 F. Supp. 2d 365, 371 (D. Mass. 2005) (Gertner, J.).

In sum, in every case, a sentencing court must now consider <u>all</u> of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient, but not greater than necessary, to meet the goals of sentencing. Additionally, where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. See <u>United States v. Denardi</u>, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet the four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

**V.    APPLICATION OF THE STATUTORY FACTORS TO THIS CASE**

In the present case, the Court must consider all of the factors identified in 18 U.S.C. § 3553(a) to craft a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. § 3553(a)(1). Counsel submits the factors weigh as follows in Johnson's case:

A.    <u>The Nature and Circumstances of the Offense and Defendant's History and Characteristics</u>

As previously discussed, and will be abundantly obvious at sentencing, Johnson enjoys an unusually significant amount of family, friend and community support. He has admitted his involvement in this fraud scheme. Through his right of allocution, Johnson will further express his regret, and remorse, for these offenses and looks forward to continuing his business and providing for his family.

As stipulated in the Factual Proffer[5] in connection with Johnson Plea Agreement[6], Johnson receive $389,627 in fraudulent proceeds. Of those proceeds, a single payment in the amount of $97,418 was wired to a co-defendant in the form of a "kickback". In addition, Johnson purchased 2018 GMC Denali pick-up truck for use in his business. Admittedly, Johnson used the PPP Loan proceeds to pay for the cost of this vehicle. Thereafter, the truck was outfitted with specialized tow equipment, of which a portion of the fraudulent obtains proceeds were used as a down payment.

Following the Government's discovery of Johnson's involvement in this scheme, his business checking account at Wells Fargo was seized, resulting in the seizure of approximately $190,000 in remaining proceeds.

B. The Need for the Sentence Imposed to Promote Certain Statutory Objectives

1. *To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

Mr. Johnson acknowledges his involvement in a very serious federal prosecution at a time when our country was reeling from the effects of a global pandemic. For that, he has expressed deep regret and remorse which will be reiterated at sentencing.

Other than awaiting a bond hearing, Johnson has never experienced incarceration. Any sentence imposed by this Court will serve as an adequate deterrent in Johnson's particular circumstances, thereby achieving the goals of promoting respect for the law and providing a just punishment.

2. *To afford adequate deterrence to criminal conduct.*

---

[5] ECF No. 29.
[6] ECF No. 30.

Mr. Johnson is before this Court as an individual with no criminal convictions. With his choice to become involved in this prosecution, he brought shame upon himself and his family. His prosecution and conviction for this case in the serious venue of federal court, along with the very sobering possibility of incarceration, provides a more-than-adequate general deterrent to other, similarly situated individuals. Therefore, in Johnson's particular circumstances, a sentence below the advisory guideline range would send an appropriate message to others and deter people from committing similar crimes.

Additionally, Johnson has already brought about a significant, and unnecessary disruption to his business he, otherwise, legitimately built and cultivated over the last ten years.

Considering all the information available to the Court, a sentence below the guidelines and consistent with Johnson's involvement *relative* to other individuals, will provided more than a sufficient deterrent to him, and other similarly situated individuals, in the future.

Finally, it is well-established that the *certainty* of punishment, not the *severity* of it, has the most significant general deterrent effect. *See*, *e.g.*, CESARE BECCARIA, ON CRIMES AND PUNISHMENTS AND OTHER WRITINGS 63 (Richard Bellamy, ed.; Richard Davis, trans., Cambridge University Press 1995) (1764); Frank H. Easterbrook, *Criminal Procedure as a Market System*, 12 LEGAL STUD. 289, 295 & n.7 (1983); Alfred Blumstein, *Prison*, *in* CRIME 387, 408-409 (Wilson & Petersilia, eds., 1995); Daniel S. Nagin & Greg Pogarsky, *Integrating Celerity, Impulsivity, and Extralegal Sanction Threats into a Model of General Deterrence: Theory and Evidence*, 39 CRIMINOLOGY 865 (2001); Michael Tonry, *The Functions of Sentencing and Sentencing Reform*, 58 STAN. L. REV. 37, 52-54 (2005); Raymond Paternoster, *How Much do we Really Know about*

*Criminal Deterrence?*, 100 J. CRIM. L. & CRIMINOLOGY 765, 818 (2010) ("The safest conclusion from the literature thus far would be that the perception of certain legal and extralegal sanctions does seem to act as a modest deterrence factor, but that the perceived severity and celerity of punishment do not appear to be effective deterrents to crime, and we know virtually nothing about celerity."). Therefore, even a sentence below the advisory Guidelines range would send an appropriate message to others and deter people from committing similar crimes.

        3.    *To protect the public from further crimes of the defendant.*

While it is impossible to determine Johnson's future decisions, he now stands as a convicted felon at the age of 29. Considering his employment history, his cooperation with authorities following his arrest, along with his demonstration of remorse, this, optimistically, suggests that Johnson is unlikely to re-offend in the future.

        4.    *To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

Mr. Johnson has demonstrated his ability to start, and run, a business from a young age without pursuing a formal education beyond high school. Nonetheless, he may very well serve himself well by taking advantage of the educational opportunities while on federal supervision. Not only would this be beneficial to Johnson's business endeavors, it may well contribute to ameliorating the possibility of recidivism.

    C.    <u>The Sentencing Range Established by the Sentencing Commission</u>

In *Booker*, the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular

sentencing guidelines range. *Booker,* 125 S. Ct. at 756. This renders the sentencing guidelines advisory. Id.

      D.      The Need to Avoid Unwarranted Disparities

Due to Johnson's particular circumstances, a sentence below the range suggested by the advisory guideline range will not result in unwarranted sentencing disparity.

      E.      The Need to Provide Restitution to Any Victims of The Offense

In his Plea Agreement, Johnson agreed to restitution and forfeiture in the amount of $165,722.13. There is reason to believe the continued viability of Johnson's towing business affords a realistic expectation he will meet these obligations. Although the timeline to satisfy this significant figure is unclear, Johnson's ability to maintain his business as a going concern certainly will provide a better outlook for his prompt repayment of the loss he inflicted.

**VI.    CONCLUSION**

Based on the above stated reasons, the defense respectfully requests that this Court provide Johnson with an opportunity for community supervision, or alternatively, a brief period of incarceration.

[THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK]

        Respectfully submitted,
        LAW OFFICE OF ANDREW G. GAY, JR., LLC

        _____
        ANDREW G. GAY, JR.*
        Attorney for Defendant
        Identification No. 83401
        1518 Walnut Street, Suite 807
        Philadelphia, PA  19102
        (215) 545-7110
        (215) 545-7131 (facsimile)
        Email: AGGJR@AGGJR.com

\* *Pro hac vice*

## CERTIFICATE OF SERVICE

I, Andrew G. Gay, Jr., hereby certify that a true and correct copy of this document was served this 23rd day of July 2021, in accordance with the Federal Rules of Criminal Procedure via notice of filing that is automatically generated by ECF to those counsel, or parties, who are authorized to receive Notices of Electronic Filing, to include, without limitation, the counsel listed on the attached Service List.

_____
ANDREW G. GAY, JR.*
Attorney for Defendant

* *Pro hac vice*

**SERVICE LIST**
**UNITED STATES V. TONYE C. JOHNSON**
**CASE NO. 21-CR-60017-RKA**

David A. Snider, Esquire
Assistant United States Attorney
United States Attorney's Office
Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132

Philip Trout, Esquire
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, DC 20530

# Exhibit A

Sonya Johnson

2100 Carolton Way

Flourtown, PA 19031

July 19, 2021

Your Honor:

I am writing to vouch for the character of my son, Tonye Johnson, who faces criminal sentencing before your court on Thursday July 29, 2021.

My son, Tonye made a mistake, which has resulted in the charges against him. Tonye has expressed his deepest sense of remorse for allowing himself to get caught up in the unlawful activities of this case. Tonye has the determination to learn from this experience and create more positive pathways in his life to prevent anything like this from happening again.

Tonye has five children (4 boys and a little girl), ranging from ages 8-1 years old. Tonye's children adore him, and I can't imagine them without their dad in their lives. He provides for them, spends family time, even at young ages he is instilling in them the value of family, education, hard work, dedication, and being of sound character. Tonye is an incredible father, and his children need him.

Since the age of 3 years old, Tonye has been my protector. He stopped his dad from punching me at the age of 3. Tonye is dependable and has always made sure "Mom Dukes" was safe, doing well, and had what I needed to survive in this crazy world. Your Honor, my son truly means the world to me.

Tonye is the type of person that will give you the shirt off his back, make sure you have a meal to eat, offer you a place to stay (even if it's Mom Duke's house, as that's what his friends, now our family call me). Tonye serves as a great support for our family, and I am so proud of the man he has become. Tonye had played football for school, as well as community teams. His years of dedication to the sport has provided him the opportunity to coach little league football and serve as a mentor for many young boys and men in the community. He has built long-lasting relationships through the years with teachers, coaches, co-workers, friends, and family.

Tonye is one of the hardest working young men I know. He's built his tow truck business on his own, starting with working from his car, learned the business, saved his money, purchased his first tow-truck, continued to work hard, and dedicated himself to building the very successful tow-truck company he has today, now with a fleet of 4 trucks.

Your Honor, I ask that you please have mercy on my son when you are given Tonye his sentence. Tonye is an amazing young man with strong character, he is hardworking and motivated to do positive things with his life. Tonye is supportive and dedicated to his children, family, and friends.

Your Honor, thank you for your time.


Sincerely,

Sonya Johnson

To whom it may concern,

I am a 28-year-old Union Plasterer with no criminal record. I am the proud son of two United States Army War Veterans! Just a quick introduction just in case you were wondering the credentials and character behind this letter.

When I was six years of age I moved to the Northeast part of Philadelphia and met my now called brother during our football program. Tonye was and still is an outstanding player. Tonye was named a star very soon after he began his football career, because of his outstanding personality and die hard need to make everybody around him feel loved and cared for.

This is a man that would take your mother's trash out if your out of town, without you even asking. The type of friend that brings you soup while you're sick, oppose to one of those "friends" you only see during a tragedy. Tonye would give you his last just to see you smile.

It broke my heart when he explained the situation that he is currently in, and needed a letter of confirmation of his enormous heart and willingness to be a better man every day for his big family.

Tonye was one of the very few kids my strict parents allowed me to hang around, mainly because of how good of a role model he was to his peers. My parents consider Tonye to be my big brother and we are almost the same age and we are not blood relatives, we consider him family because of his character; how respectful, caring and responsible he is, even from a young age.

Now that we are both grown up, I still look up to Tonye. He is a great example of a hardworking family man. Makes me so happy to see him raising 5 kids happily, while working 7 days a week and employing some people I've personally known in the neighborhood that were not doing so well. Tonye strives to take care of everyone in any way he can.

 I commend him in every way and will proudly say Tonye is my big brother! And hopefully after reading this you will realize that jail time is the last thing that this working family man of five should be thinking about!


Thank you for your time!

Sincerely,

Tyrek Brown

To whom it may concern,

I am a very good friend and business associate to Tonye Johnson. He has been towing cars for one of my companies for the past five years. He is very courteous to customers and always gets outstanding reviews. He is very punctual honest and forth right.
I have sent him to pick up vehicles with cash and I don't have to worry at all about the safety of my money or the customers car.
Mr. Johnson is a very hard-working man, an excellent father and businessman.
Mr. Johnson is a great positive influence in our community and our business industry as well.
I thank you for accepting this letter.
I hope that this letter has cast a light on the true character of Mr. Tonye Johnson.

Thank you,
Gary T Collins, President
Collins Automotive Inc.

Crynell  Properties LLC.

C+J Capital.

To whom it may concern,

I hope you read this with a open heart and mind.

I am writing this letter in regards of my personal relationship with Tonye Johnson who is father of our son Logan Johnson, I know that on paper because of this situation you may think differently of Tonye but before you fully make your mind up about him let me say a few things about him and our history. Tonye saved my life multiple times yes I know it sounds cliché but it is true, a few years back I was sexually assaulted and wasn't dealing with life to well and wanted to end it I couldn't take it but then I met Tonye, whenever I needed to talk or needed to get out of the house or needed somewhere to live he was always there but the best part was he didn't know what had happened to me he just knew I was broken and needed someone he just wanted to help in any that he could and that bond made me want to fight for my life and try to be happy again.

I ended up getting pregnant a few months after with our son logan, Tonye is an amazing father to all his kids. My son loves his father so much and everything that Tonye does he want to do. He wants to start his own business at a young age or playing football, even the small things like the music he listens to or the way he talks, he wants to do it all. Tonye has a big heart when it comes to kids. He takes in and cares about anyone kids like, my daughter Blake. He helps me take care of her, pick her up from daycare, watches her when I need help, and if I need anything financially, he has no hesitation in helping me I've never had someone like that before. I don't have the best family at all so when I need help or advice maybe even someone to lean on, he's my go to person I can always depend on.

Everyone makes mistakes and everyone messes up, we are human. But I can say I can see and can tell you that if Tonye had a chance to take it all back and never put himself in this situation he would in a heartbeat. Leaving his kids is breaking him more than you can imagine truly. I hope that you reconsider his sentence for the kids because everyone deserves a second chance in life to do better and to become a better person so less people can be in jail and stay out to make this crazy world better.

Thank You,

Nina Carter

To whom it may concern,

Hmm what can I say Tonye Johnson better known as Tone, aka smurf. He has been a major figure in my life. He might be younger than me but age is just a number. I've been through a lot in my life which caused me to become the person I am today.

Tone may not have known this, at the time he helped me through my darkest times. I've been in foster care most of my life. I've been with 7 different families, so you can imagine what my trust issues are like. Tone always been there for me. He is family, he's been family for a very long time. I can say without Tone I wouldn't have become the man I am today.

Tone played a big part in all of his brothers lives, which is about 25-50 of us. Always tried to keep us out of trouble and if we was hurting he will find some way to make us laugh. Tone was not just a great brother, but he has worn a lot of hats as Barber, Mechanic, Handyman, Babysitter, Teacher and so much more. But of all Tonye Johnson has been a great black father. Never once did he turn his kids away. Someday I want to have kids and I hope I can be half the father he is to his kids.

Some days I think to myself how does he do it? I've seen Tone bring his towing company up from the ground, from some days sleeping in his truck and some sleepless nights. The only thing that can come next is him leveling up on the success ladders. Watching Tone grow only made me go harder. Our saying "GOHARD or GOHOME", we take that to the grave because success never came to a person that wasn't working for it. There have be times I was on punishment and was not in the right state of mind and I would think no one cares about me and wonder why am I here, then I would hear someone run up my stairs and it was my bro, Tonye Johnson.

I wish Tone nothing but the greatest things in life. You deserve everything bro. You did it your way and we all look at success different. Thank u for being a great brother to me. You will always be my guy, RNR4LYFE!

Thank you,

Quamee Townsend